IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAKALA R. MELTON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV–21–148–JAR |
| ) | |
| KILO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Makala R. Melton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

## Claimant's Background

The claimant was twenty-one years old at the time of the administrative hearing (Tr. 28). She possesses at least a high school education (Tr. 28). She has no past relevant work (Tr. 28). The claimant alleges that she has been unable to work since July 13, 1998, due to limitations resulting from a mental disability, learning disability, and ADD. (Tr. 94).

## Procedural History

On April 15, 2017, Claimant protectively filed for supplemental security income benefits under Title XVI (42 U.S.C. § 1381, et seq.). Claimant's application was denied. As Claimant did not appeal this determination, it was a final decision of the commissioner. *See* 20 C.F.R. § 416.1487(a).[2] On July 23, 2019, Claimant again protectively filed for supplemental security income benefits under Title XVI (42 U.S.C. § 1381, et seq.). Claimant's application was denied initially and upon reconsideration. After an administrative hearing, Administrative Law Judge Laura Roberts ("ALJ") issued an unfavorable decision on January 26, 2021. Appeals Council denied review, so the ALJ's written

---

[2] Although Claimant requested at the hearing in this case to reopen the prior application, Claimant did not raise the ALJ's denial of reopening the prior application as an error. This Court will not consider if this was an error.

opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with nonexertional limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) improperly considering the medical evidence and opinions of consultive examiners and the testimony and opinions of a witness; (2) improperly evaluating Claimant's subjective complaints; (3) improperly utilizing the Vocational Expert's testimony.[3]

## Consideration of Medical Opinions

In her decision, the ALJ found Claimant suffered from severe impairments of "[i]ntellectual disability versus [b]orderline intellectual functioning," learning disability, and post-traumatic stress disorder. (Tr. 18). She determined Claimant could perform a full range of work with nonexertional limitations. Claimant can understand, remember, and carry out simple tasks with simple instructions in

---

[3] In Claimant's reply brief she raises one additional argument. Claimant argues that the ALJ failed to address whether Plaintiff meets the requirements under Listing 12.05 for a per se disabling impairment. When an appellant fails to raise an argument in an opening brief, the argument is "forfeited or waived" and the Court may refuse to review the alleged error. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). This Court finds Claimant did not raise the 12.05 issue in her opening brief, thus this Court will not consider this issue in review.

a routine work setting. She can have occasional interaction with coworkers and supervisor but no interaction with the general public. Claimant cannot participate in tandem or teamwork and cannot have a production rate—required of fast-paced assembly line work. Further, Claimant can have only occasional changes in work processes. (Tr. 22).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of dishwasher, janitor, or silver wrapper. (Tr. 28-29). As a result, the ALJ concluded Claimant had not been under a disability since July 23, 2019, the date the application was filed. (Tr. 29).

Claimant first contends that the ALJ did not properly discuss and consider the medical evidence from the examining consultant doctors of Dr. Bonnie Johnson, Ph.D., and William T. Bryant Ph.D. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical

5

opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Generally, the ALJ is not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). She may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence."

*Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). If she rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

First considering the ALJ's analysis of Dr. Johnson's opinion, although the ALJ did not explicitly state Dr. Johnson's name it is clear that she considered Dr. Johnson's July 2014 examination of Claimant. The ALJ summarized the results from the Wechsler Intelligence Scale for Children-IV testing that was administered as well as Dr. Johnson's opinion that Claimant had an intellectual disability and learning disorder. Dr. Johnson, however, made no specific opinion on Claimant's limitations. The ALJ included an intellectual disability in her assessment of Claimant's severe impairments but makes clear that she drew no other conclusions for Dr. Johnson's report as it lacked any opinion of Claimant's specific limitations.

The ALJ likewise thoroughly considered Dr. William Bryant's opinion. The ALJ addressed Dr. Bryant's findings from the Wechsler Ault Intelligence Scale-III as well as Dr. Bryant's conclusions. Specifically, the ALJ recited Dr. Bryant's opinions that Claimant had a mild intellectual disability but had good social skills. Further the ALJ recited that Claimant had depression which was in remission with medication and that Dr. Bryant was unable to confirm an attention deficit disorder. Despite considering all of the evidence from Dr. Bryant,

both that favorable and unfavorable to Claimant, ALJ nonetheless found that Dr. Bryant's opinion did not suggest any greater limitations than found by the State reviewing physicians.

Claimant next contends that the ALJ injected his own diagnoses of Claimant when she found that Claimant had the severe impairment of "[i]ntellectual disability versus [b]orderline intellectual functioning." (Tr. 18). Although this Court recognizes such language is somewhat unclear, this Court interprets the language as reflecting the ALJ was simply trying to draw a distinction between Claimant's medically supported diagnosis of "intellectual disability" and a similar but not supported term of "borderline intellectual functions." This Court finds that the ALJ was not inserting his own diagnosis as Claimant suggests.

Claimant additionally argues that the that the ALJ improperly weighed the mental medical opinions. Specifically, she argues that the ALJ gave "great weight" to the opinions of the state reviewing physicians, who she believes erroneously failed to identify an intellectual disability. Both state reviewing physicians, Ryan Jones, Ph.D. and James Sturgis, Ph.D., reviewed the medical record as a whole, including the 2014 records from Dr. Johnson that Claimant suggests were not reviewed, and recognized that Claimant had mental health conditions but nonetheless is capable of working with some limitations. The ALJ not only recognized these limitations and included them in Claimant's RFC, but also considered the opinions of other physicians. The ALJ made clear that she relied on the limitations of the state reviewing physicians as no other physicians

suggested the Claimant had specific limitations. It is not evident to this Court that the ALJ put more weight on the state reviewing physician's opinions than any other physician in the record. This Court finds the ALJ did not err in her consideration of the opinions of the state reviewing physicians.

Claimant next contends that the ALJ refused to assess the testimony and observations of Claimant's special education teacher, Mandy Abel. Contrary to this assertion, the ALJ did in fact consider the teacher questionnaire and letter from Ms. Abel. Although the ALJ does point out that this evidence is connected to the prior claim, she both summarized and analyzed the evidence. The ALJ did not assess the persuasiveness of the questionnaire, as it was a non-medical opinion, but did assess the persuasiveness of the Ms. Abel's letter and found it to not be fully consistent with the record and thus not persuasive. It is clear that the ALJ took the evidence from Ms. Abel into consideration in making her findings. This Court finds the ALJ made no error in assessing the testimony and evidence of Ms. Abel.

When all the evidence is considered, the conclusion that the Claimant could perform a full range of work with nonexertional limitations is supported by substantial evidence. *See Hill v. Astrue*, 289 F. App'x. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of [her] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [she] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The ALJ

specifically noted every medical record available in this case, gave reasons for her RFC determination, and ultimately found that the Claimant was not disabled. Accordingly, the decision of the Commissioner should be affirmed.

### Evaluation of Subjective Complaints

Claimant asserts the ALJ improperly evaluated the consistency of Claimant's statements. Although Claimant contends that the ALJ did not specify consistency or make specific findings about Claimant's testimony and reports, Claimant's argument is devoid of any specific evidence that the ALJ failed to analyze. Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but [she] must set forth the specific evidence upon which [she] relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of her evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 404.1529. She determined Claimant's medically determinable impairments could reasonably cause her alleged symptoms, but she found that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (Tr. 23).

In assessing Claimant's consistency, the ALJ found that although Claimant seemed open and honest at the hearing, she did not believe Claimant's statements about intensity, persistence, and limiting effects were consistent with the objective medical evidence. Specifically, the ALJ pointed out that Claimant spends time with others and has worked at a daycare in the past. Despite Claimant's learning disability, IQ impairment, and PTSD, her daily activities suggest that she is able to perform the mental activities of work. Additionally, Claimant's anxiety and mood seemed to be controlled by medication.

The ALJ's evaluation of Claimant's subjective complaints was linked to the evidence and included specific reasons for the weight given to Claimant's symptoms. Based upon the evidence of record, the ALJ concluded Claimant had an RFC to perform a full range of work at all exertional levels but with nonexertional limitations. This Court finds no error in the ALJ's assessment of Claimant's subjective complaints.

**Testimony of Vocational Expert**

Claimant contends the ALJ failed to account for all of Claimant's impairments in the hypothetical questioning of the vocational expert. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In posing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489. Here, the ALJ's questioning mirrored Claimant's RFC. As such, this Court finds the ALJ did not err in the questioning of the vocational expert.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

**DATED** this 28th day of September, 2022.

_____
**JASON A. ROBERTSON**
**UNITED STATES MAGISTRATE JUDGE**